■ MURRAY SCHWARTZ et al., Appellants, v ARTHUR TESSLER, Respondent.—Order, Supreme Court, New York County (Edward J. Greenfield, J.), entered June 30, 1986, which denied plaintiff's motion, pursuant to CPLR 5015 (a) (2), for a new trial, based upon newly discovered evidence, is unanimously reversed, on the law, on the facts, and in the exercise of discretion, motion granted, judgment vacated, and new trial ordered, without costs.

On November 18, 1976, Mr. Murray Schwartz (Mr. Schwartz), approximately 51 years old, was admitted to New York University Medical Center (Medical Center) with a prostate problem. Prior to the surgery, discussed, *infra,* Mr. Schwartz alleges he was both capable of normal penile erection and engaging in sexual intercourse with his wife. Thereafter, on November 23, 1976, while Dr. Arthur Tessler (Dr. Tessler) was doing a transurethral resection (TUR), he perforated the urethra, which caused a false passage. As a result, Dr. Tessler abandoned the TUR procedure, and, on November 24, 1976, he performed a suprapubic prostatectomy on Mr. Schwartz.

Following the surgery, at his first attempt to have sexual

intercourse with his wife, Mr. Schwartz discovered a curvature in his penis, which prevented him from having intercourse. According to Mr. Schwartz, Dr. Tessler initially advised him that this curvature was temporary and would disappear. However, when the curvature remained, Dr. Tessler referred Mr. Schwartz to Dr. Adrian W. Zorgniotti, who diagnosed the condition as Peyronie's plaque, which is a disease attributable to the aging process.

Subsequently, in September 1978, Mr. and Mrs. Schwartz commenced the instant medical malpractice action, which contains a cause of action for Mrs. Schwartz concerning loss of services, against defendants Dr. Tessler and the Medical Center.

Issue was joined, and, thereafter, a trial took place in March and April 1982. During the trial, the action was discontinued against defendant Medical Center with prejudice and the action severed.

In substance, at the trial, while plaintiffs contended that defendant Dr. Tessler's penetration of the urethral wall caused the curvature, defendant Dr. Tessler denied that conclusion, upon the basis that the curvature was the result of Peyronie's plaque. The jury was unable to reach a verdict, being divided 3 to 3.

Thereupon, on April 16, 1982, the day the jurors were discharged, defendant Dr. Tessler moved to dismiss the complaint. After more than 14 months had elapsed, on July 1, 1983, the trial court granted defendant's motion to dismiss, and for entry of judgment in favor of defendant Dr. Tessler.

Almost three months later, on September 23, 1983, Mr. Schwartz saw Dr. Marc Goldstein (Dr. Goldstein), who is a specialist in urology. Dr. Goldstein concluded that Mr. Schwartz did not suffer from Peyronie's plaque. Thereafter, on November 2, 1983, Dr. Goldstein performed a procedure known as the Nesbit wedge correction, which involves the removal of tissue. The result of this operation was that the penile curvature was corrected, so that now Mr. Schwartz was able to resume normal sexual intercourse.

About 2½ months after Dr. Goldstein's successful operation, on January 18, 1984, plaintiff made a motion for a new trial, upon the ground of newly discovered evidence obtained during the course of surgery. In support of this motion, Dr. Goldstein submitted an affirmation and reply affirmation, which, in substance, asserted that, based upon his observation during the surgery, in his professional opinion, if Peyronie's plaque

existed he would have seen it, and the curvature was caused solely by the unsuccessful TUR, discussed, *supra.* With opposing papers, this motion was submitted to the trial court on February 3, 1984.

More than two years and five months after submission of the new trial motion, on June 30, 1986, without any apparent reason for the delay, the trial court denied it.

We disagree.

In order to merit relief on the ground of newly discovered evidence, pursuant to CPLR 5015 (a) (2), a movant must demonstrate "that the newly discovered evidence is material, is not merely cumulative, is not of such a nature as would merely impeach the credibility of an adverse witness and that it would probably change the result if a new trial were granted. He must also show that the evidence has been discovered since the trial and could not have been discovered before the trial by the exercise of due diligence" *(Mully v Drayn,* 51 AD2d 660 [1976]). Furthermore, CPLR 5015 (a) (2) requires, in pertinent part, that the "newly-discovered evidence * * * could not have been discovered in time to move for a new trial under section 4404" (note: *see,* 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5015.07, for commentary concerning this requirement).

Based upon our review of the record, we find the evidence of Dr. Goldstein submitted in support of the motion "could not have been discovered in time to move for a new trial (see CPLR 4404, 4405), went directly to the heart of the fact issues [was the penile curvature caused by the unsuccessful TUR or Peyronie's plaque] raised at the trial and, if credited, would probably have produced a different result" *(Cesla v Frydman,* 47 AD2d 742, 742-743 [1975], *lv dismissed* 36 NY2d 982 [1975]). This newly discovered evidence only became available after, and as a result of, the surgery performed by Dr. Goldstein.

We recognize that "motions of this type are addressed to the sound discretion of the trial court" *(National Hotel Mgt. Corp. v Shelton Towers Assocs.,* 111 AD2d 154 [1985], *mot to dismiss appeal granted* 65 NY2d 1053 [1985]). However, in view of our examination of the record herein, we find that the trial court erred and improvidently exercised its discretion *(National Hotel Mgt. Corp. v Shelton Towers Assocs., supra).*

Accordingly, we reverse, grant plaintiff's motion, vacate the judgment, and order a new trial. Concur—Kupferman, J. P., Ross, Milonas, Kassal and Ellerin, JJ.